STATE, EX REL. CITY OF RED CLOUD, RELATOR, V. EDWARD M. SEARLE, JR., AUDITOR, RESPONDENT.

FILED APRIL 5, 1906. No. 14,643.

1. Cities: LIGHTING SYSTEM: BONDS. Cities of the second class and villages in this state have the option to vote bonds to the amount of 5 per cent. of the assessed valuation of their taxable property to establish a heating or lighting system, under the provisions of sections 1-5, art. V, ch. 14a, Comp. St. 1903, or limit the amount of such bonds to 2½ per cent. of such valuation by proceeding under chapter 33, laws 1905.

2. ——: BONDS: REGISTRATION. Bonds, designated electric light bonds, to the amount of 5 per cent. of such assessed valuation, which the record fairly shows were voted and issued under the provisions of the act of 1903, *held* valid and entitled to registration.

ORIGINAL application for a writ of mandamus to compel respondent to register certain bonds. *Writ allowed.*

*L. H. Blackledge,* for relator.

*Norris Brown, Attorney General,* and *W. T. Thompson,* contra.

Barnes, J.

This is an original application for a writ of mandamus to compel the auditor of public accounts to register a series of electric light bonds voted by the city of Red Cloud, a city of the second class, having less than 5,000 inhabitants. It appears from the petition of the relator that on the 9th day of January, 1906, the city of Red Cloud voted bonds to the amount of $10,000 (which is 5 per cent. of the value of its taxable property) to "construct and establish a system of electric lights in and for said city"; and on the 12th day of March, 1906, presented said bonds, together with their history, to the respondent for registration and certification, as provided by law; that the auditor refused to register them, for the following reason: "This department cannot register electric lighting bonds of your city presented for registration by Mr. L. H. Fort, for the reason that you have voted them under the wrong statute. The statute providing for the voting of electric lighting bonds says: 'That but two and one-half per cent. of the assessed valuation can be voted.'" And thereupon this application was made.

To the relator's petition the respondent has filed a general demurrer, which raises the question as to whether the relator has power, under the statutes now in force, to vote electric light bonds to the amount of 5 per cent. of the taxable value of its property, as shown by the last previous annual assessment thereof. It appears that the legislature, at its session of 1889, passed an act authorizing any city of the second class to establish, maintain, operate and control a system of electric lights, and to vote bonds for that purpose. The act by its terms limited the amount of such bonds to $2\frac{1}{2}$ per cent. of the taxable value of the property of such city, as shown by the last previous annual assessment. Laws 1889, ch. 19. In the year 1901 the legislature passed an act authorizing cities of the first and second class to establish and maintain a heating or lighting system; to vote bonds for that purpose, limiting the

21

bonds so voted to an amount not exceeding 5 per cent of the taxable value of the property of such city. Laws 1901, ch. 22. That act did not purport to amend or repeal the law of 1889, but was a separate and independent act. In the year 1903 the legislature amended the last-mentioned act so as to make it apply to villages as well as to cities of of the first and second class. Comp. St. 1903, ch. 14a, art. V, secs. 1-5.

It is apparent that the legislature did not intend, by the act last above mentioned, and the amendment thereto, to repeal the act of 1889, authorizing the construction and establishment of electric light systems, because at its session of 1905, it passed an act amending the law of 1889 (Comp. St. 1905, ch. 14, art. I), as follows:

Sec. 124. "Any city of the second class in this state and any village shall have the power and is hereby authorized to establish and maintain a system of electric lights for such city or village; and the city council of such city or the board of trustees of such village shall have the power to levy a tax not exceeding five mills on the dollar in any one year for the purpose of establishing, extending, and maintaining such system of electric lights."

Sec. 125. "Where the amount of money which would be raised by the levy provided for in section 124 would be insufficient to establish a system of electric lights as contemplated herein in any city or village in this state, such city or village may issue its bonds bearing not to exceed five per cent. interest and maturing in twenty years, but payable at any time after the expiration of ten years, at the option of the city or village, for the purpose of raising a sum sufficient to establish such electric light system; provided that the aggregate of bonds issued for such purpose shall not exceed two and one-half per cent. of the taxable value of the property of such city or village as shown by the last previous annual assessment."

It will be seen by a comparison of these acts, that they are unlike in several particulars. One provides for establishing and maintaining a heating or lighting system, and

authorizes cities of the first and second class and villages to vote bonds therefor to the amount of 5 per cent. of their assessed valuation; provides, that such bonds may bear 6 per cent. interest, and shall run for 20 years, but shall be payable at the option of the municipality at any time after 5 years; while the other only authorizes cities of the second class and villages to vote electric light bonds, expressly limits the amount of such bonds to $2\frac{1}{2}$ per cent. of the taxable value of the property of such city or village, provides that such bonds shall not bear more than 5 per cent. interest, and makes them payable in 20 years, with an option to the municipality to pay them at any time after 10 years. Again, one provides specifically how contracts for the construction of the system mentioned therein shall be let; while the other makes no such provision. It is thus apparent that the legislature in passing each of these acts recognized the existence of the other, and there can be no doubt that the legislative intention was that the provisions of both acts should be enforced. It may seem that the point raised by the respondent is extremely technical, yet we must give it our careful consideration.

By a rule of statutory construction it is made our duty to hold each of the acts in question valid, and give to each of them all the force and effect possible. Under this rule it seems clear that cities of the second class and villages have an option, to vote bonds to the amount of 5 per cent. of their assessed valuation to establish a heating or lighting system, under the provisions of section 1-5, art. V, ch. 14a, Comp. St. 1903, or bonds to the amount of $2\frac{1}{2}$ per cent. of such valuation to construct and establish an electric light system, under the provisions of the act of 1905 above mentioned. So it only remains for us to ascertain from the record which act the bonds in question were voted and issued under. The history of the bonds shows that the proclamation and notice of the election stated at the outset that the amount of the bonds should be 5 per cent. of the assessed taxable property of the city, and that the vote should be taken and the bonds issued under the provisions

of sections 1-5 above referred to; that the proposition con-
tained in the proclamation and notice of election was duly
adopted by the electors of the city; that the bonds were
made payable in 20 years with an option to pay them at
any time after 5 years as provided by the act of 1903, and
state upon their face that they are voted and issued under
the provisions of that act. It may therefore be said that
the record fairly shows that the bonds were voted and
issued under the act of 1903, and not under the act of 1905.
So we are of the opinion that the bonds were properly
voted and issued under the act authorizing the city to vote
bonds to the amount of 5 per cent.; that the objection of
the respondent was not well taken, and that the relator is
entitled to the relief prayed for. For the foregoing rea-
sons, the peremptory writ of mandamus is hereby allowed.

WRIT ALLOWED.