AUSTIN M. BROWNFIELD, APPELLANT, V. CITY OF KEARNEY ET AL., APPELLEES.

FILED OCTOBER 17, 1913.    No. 17,974.

1. **Municipal Corporations: LIGHTING PLANT: BOND ISSUE** In order to the legal issue of bonds for the construction of a municipal lighting plant in cities of the class having a population of from 5,000 to 25,000 inhabitants, it is necessary that the provisions of section 54 of the city charter (Comp. St. 1911, ch. 13, art. III) be followed and complied with.

2. ———: ———: **STATUTES: REPEAL BY IMPLICATION.** The provisions of that section having been enacted and re-enacted subsequent to the passage of sections 1 and 2, art. V, ch. 14a, Comp. St. 1911, supersede the latter act wherein there is a conflict in their provisions.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*Thomas F. Hamer* and *Warren Pratt*, for appellant.

*H. M. Sinclair* and *N. P. McDonald, contra.*

REESE, C. J.

On the 14th day of February, 1912, the mayor and council of the city of Kearney submitted to the electors of the city a proposition to issue the bonds of the city in the sum of $40.000 for the purpose of raising money to pay for the construction of a municipal lighting plant and system for the use of the city and its inhabitants. There were 1,086 votes cast at the election, of which 618 votes were cast in favor of the proposition and 468 votes against it. The proposition was declared carried, the bonds prepared, submitted to and registered by the state auditor of public accounts, and delivered to the state treasurer on an executory contract between the city and state treasurer for their sale to the school funds of the state; but the money was not paid for them, they remaining in the possession of

the state treasurer, when a temporary injunction was issued, the whole matter stayed, and still rests *in statu quo*. The cause was tried in the district court, the trial resulting in a finding in favor of defendants, the temporary injunction dissolved, and the plaintiff's petition dismissed. Plaintiff appeals.

The petition is of considerable length, and attacks the proceedings in the matter of the issuance of the bonds with careful particularity, beginning with the alleged want of power to issue bonds for so great an amount, the alleged irregularities in the proceedings antedating the election, the lack of a sufficient majority of votes in favor of the issue, resulting in the defeat of the proposition. The answer admits the averments of the petition as to the corporate character of the city, the official positions of the defendants, mayor, councilmen, etc., that the election was held and the number of votes polled, the number of votes in favor and the number against the proposition, and the making and registration of the bonds, as alleged. All other averments of the petition are denied. In view of the contentions of the parties as to the ruling question presented, it is not deemed essential that the pleadings be further noticed in detail. Nor do we deem it necessary to dwell upon the evidence adduced upon the trial.

Practically the whole contention is centered upon whether the provisions of section 54, art. III, ch. 13, Comp. St. 1911 (embodied in the city charter), or whether sections 1 and 2, art. V, ch. 14*a*, Comp. St. 1911, are to be applied and held to be the law, by which the city council and the people should have been governed. It is insisted by plaintiff (appellant) that the provisions of section 54, *supra*, should have been complied with by the council, and, if so, the bonds are void. This section requires a three-fifths majority vote in order to authorize the issue of bonds. It is conceded that there was not that majority in favor of the proposition. It is contended that the powers of the city council did not depend upon that section, but that their action was taken under the provisions of sec-

tions 1 and 2, art. V, ch. 14a, Comp. St. 1911, and that upon those sections, and those alone, do defendants rely as giving authority for the action taken by the city council.

An examination of the legislation as contained in the two somewhat antagonistic provisions shows that section 54, art. III, ch. 13, Comp. St. 1911, was passed in 1901, and has been practically continued, but with later amendments, until 1909, when it was re-enacted, with slight modification, by House Roll No. 129 (laws 1909, ch. 19) as it appears in sec. 54, art. III, ch. 13, Comp. St. 1911. Sections 1 and 2, art. V, ch. 14a, Comp. St. 1911, appear to have been enacted in 1901, and to have remained as then passed until 1903, when chapter 25, laws 1903, was passed, since which time no change or amendment has been made, and they now stand as sections 1 and 2, art. V, ch. 14a, Comp. St. 1911. We find it impossible to hold that the later enactments of section 54, *supra,* of the city charter, must not govern and control the powers of the mayor and council as the last expression of the legislative will, and that wherein it conflicts with the section relied on by the city the latter must give way. We are not unmindful of our decision in *State v. Searle,* 76 Neb. 272, decided in 1906, where a quite similar question was presented, but upon the earlier statutes. The later enactments of the legislature seem to render it certain that the powers of the city council are to be limited thereby. We can see no escape from this conclusion, and that the amended charter as it existed at the time of the submission and election must govern and be complied with. This not having been done, it follows that the bonds are invalid.

The decree of the district court is therefore reversed and the cause is remanded, with directions to that court to reinstate the cause and enter a decree rendering the injunction perpetual.

REVERSED.

LETTON and FAWCETT, JJ., not sitting.